WILLIAM W. MERCER
United States Attorney
P.O. Box 1478
2929 Third Avenue North, Suite 400
Billings, MT 59103
Phone: (406) 657-6101
FAX: (406) 657-6055

CARL E. ROSTAD
Assistant U.S. Attorney
U.S. Attorney's Office
P.O. Box 3447
Great Falls, MT 59403
119 First Ave. North, #300
Great Falls, MT 59401
Phone: (406) 761-7715
FAX: (406) 453-9973

ATTORNEY FOR PLAINTIFF
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| UNITED STATES OF AMERICA, | CR 02-49-BLG-RFC |
|---|---|
| Plaintiff, | |
| vs. | SENTENCING MEMORANDUM AND OPPOSITION TO RELEASE PENDING APPEAL |
| CLIFFORD G. BIRDINGROUND, | |
| Defendant. | |

Pursuant to this Court's order of October 30, 2006, the United States submits this sentencing memorandum to assist the Court in imposing a sentence which is both factually and legally correct.

The United States re-confirms to the Court that it has no objections to the presence report as written. The United States also reiterates its objection to any downward departure from the guideline range as calculated.

## BACKGROUND

• ***Factual Basis for Plea***

Clifford BirdinGround was the Tribal Chairman of the Crow Tribe of Indians, Crow Agency, Montana. BirdinGround was elected as Chairman on May 13, 2000 and was installed in that office on July 1, 2000. Shortly after taking office, Chairman BirdinGround began an association with Homestead Hyundai Subaru, Billings, Montana.

Between July, 2000, and August, 2000, BirdinGround arranged for the trade-in of nine (9) vehicles owned by the Crow Tribe and one (1) vehicle owned by the Little Big Horn Casino at Homestead. None of the vehicles were personally owned by Chairman BirdinGround. The vehicle trade-ins established a credit balance, or tribal funds on account, of approximately $62,700, which was identified as the Crow Tribal Equity Account.

Over the next few months, the Chairman directed Homestead to expend the tribal funds held in the equity account to the benefit of eight (8) individual purchasers, primarily friends, associates and family members of BirdinGround. Homestead applied, with BirdinGround's approval, $61,865 from the Crow Tribal Equity Account towards down payments on ten (10) vehicles purchased by Crow tribal members.

In addition to the equity account vehicles which were purchased by individuals using, in part, tribal monies, the Crow Tribe of Indians purchased sixteen (16) vehicles

from Homestead totaling $414, 692 and the tribal gaming enterprise, the Little Big Horn Casino, purchased three (3) more vehicles for $69,832. These purchases occurred over a 90 day period from July, 2000, to September, 2000. During that period of time, Homestead provided and BirdinGround accepted $2,700 ($100 per vehicle) in "birddog fees," payments designed to reward the Chairman for sending private and public business to the dealership and to motivate future business between the tribe and the dealership.

- ***Procedural History***

Clifford BirdinGround was indicted by a grand jury on April 19, 2002. Over a year later, he was sentenced to a term of 37 months on September 11, 2003. He appealed a ruling of the district court denying his motion to withdraw a guilty plea and the conviction was affirmed by the Ninth Circuit Court of Appeals on August 24, 2004, in an unpublished memorandum opinion. *United States v. BirdinGround*, 107 Fed.Appx. 806, 2004 WL 1894986 (9th Cir. 2004).

In a motion for reconsideration, BirdinGround raised the issue of whether *United States v. Ameline*, 376 F.3d 967 (9th Cir. 2004), entitled him to remand for reconsideration of his sentence. On June 30, 2005, the Ninth Circuit reaffirmed its decision on the substantive merits of BirdinGround's claims, but ordered the case remanded for consideration under *Booker*. *United States v. BirdinGround*, CA Nos. 30397, 30422 (9th Cir. 2005)(order), citing, *United States v. Booker*, 543 U.S. 220 (2005).

On August 9, 2005, almost two years after the original sentence was imposed,

the district court reaffirmed its original sentencing decision. BirdinGround appealed. BirdinGround appealed on a single issue: whether an *Ameline* remand requires a new hearing before the court determines whether the sentence would be the same or different under advisory, as opposed to mandatory, guidelines. On September 29, 2006, the Ninth Circuit remanded the case a second time, finding that the district court erred because it "did not solicit the views of counsel before deciding to re-sentence" BirdinGround. *United States v. BirdinGround*, 185 Fed.Appx. 713, 2006 WL 2829856 (9th Cir. 2006)(unpublished memorandum opinion). Citing, *United States v. Montgomery*, 462 F.3d 1067 (9th Cir. 2006).

## **ORIGINAL SENTENCE AND SENTENCE AFTER REMAND WERE APPROPRIATE**

*Booker's* advisory Guidelines system requires a sentencing court to "consult [the] Guidelines and take them into account when sentencing," 543 U.S. at 264, "but . . . permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a)." *Id.* at 245-46. Sentencing should thus proceed in several steps. First, the district court must begin by correctly calculating the advisory Guidelines range. *United States v. Mix*, 457 F.3d 906, 911 (9th Cir. 2006) ("This consultation requirement from Booker means that a district court must calculate correctly the sentencing range prescribed by the Guidelines."); see, *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006) (the "Guidelines calculation . . . serves as the starting point for the district court's sentencing decision"); see also, e.g., *United States v. Jointer*, 457 F.3d 682, 686 (7th Cir. 2006) ("Although the Guidelines are now advisory, not mandatory, they serve as a necessary starting point in the court's deliberations."); *United States v. Dixon*, 449 F.3d 194, 204 (1st Cir. 2006) (determining correct Guidelines range

"remains an appropriate starting point for constructing a defendant's sentence"); *United States v. Terrell*, 445 F.3d 1261, 1264 (10th Cir. 2006) ("[t]he Guidelines continue to be the 'starting point' for district courts"). In the government's view, adequate consultation requires the court to apply and consider the traditional Guidelines departure factors as well.

Next, the court must consider the other sentencing factors set out in 18 U.S.C. § 3553(a), and determine whether any of those factors warrants a sentence above or below the advisory Guidelines range. See *Mix*, 457 F.3d at 913 (Section 3553(a) and Booker require sentencing court to "conduct parallel analyses – first employing the Guidelines, and then considering non-guideline sentencing factors under § 3553(a)").

Finally, the court must state the reasons for the sentence imposed. The extent of explanation that the court must provide varies depending on whether the court imposes a sentence within or outside the advisory Guidelines range.

In *Booker*, the Supreme Court emphasized that the Guidelines would continue to play an important role in sentencing and in attaining the goals reflected in the Sentencing Reform Act. 543 U.S. at 263-64. See, e.g., *United States v. Jiménez-Beltre*, 440 F.3d 514, 518 (1st Cir. 2006) (*en banc*) ("[T]he Supreme Court has stressed the continuing role of the guidelines in promoting uniformity and fairness."); *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005) ("The Guidelines remain an essential tool in creating a fair and uniform sentencing regime across the country.").

Aside from Booker's explicit endorsement of their continued vitality, the Guidelines are entitled to substantial weight in the sentencing calculus for at least three reasons. First, they are the one Section 3553(a) factor that accounts for all of the

Section 3553(a) factors. As the First Circuit has explained, "the guidelines cannot be called just 'another factor' in the statutory list," because "they are the only integration of the multiple factors" in Section 3553(a). *Jiménez-Beltre*, 440 F.3d at 518. Congress specifically directed the Sentencing Commission to formulate Guidelines that "assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)." 28 U.S.C. § 991(b)(1)(A); see 28 U.S.C. §§ 994(f), (m). Congress also directed that, in formulating the Guidelines, the Commission consider the appropriate role and weight, in light of Congress's policy choices, of various factors related to the nature and circumstances of the offense and the history and characteristics of the defendant. See, e.g., 28 U.S.C. §§ 994(c)-(e). Indeed, as the Eleventh Circuit has observed, "the factors the Sentencing Commission was required to use in developing the Guidelines are a virtual mirror image of the factors sentencing courts are required to consider under Booker and § 3553(a)." *United States v. Shelton*, 400 F.3d 1325, 1332 n.9 (11th Cir. 2005); compare, e.g., 28 U.S.C. § 991(b)(1)(B) (requiring the Commission to establish sentencing practices and policies that "avoid[] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct") with 18 U.S.C. § 3553(a)(6) (requiring sentencing judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"). Thus, rather than being "something separate and apart from Congress's objectives in § 3553(a)," the Guidelines "embody many of those objectives." *United States v. Johnson*, 445 F.3d 339, 343 (4th Cir. 2006).

Second, the Commission's evaluation of the factors in Section 3553(a) is based on more than eighteen years of study and revision, including consideration of sentencing practices across the country, coupled with congressional guidance on what sentences and factors promote the Sentencing Reform Act's objectives. See, e.g., *Booker*, 543 U.S. at 263-264; *United States v. Buchanan*, 449 F.3d 731, 736 (6th Cir. 2006) (Sutton, J., concurring) (Guidelines reflect "the aggregate sentencing experiences of individual judges, the administrative experience of the Commission, and the input of Congress"); *Mykytiuk*, 415 F.3d at 607 ("The Sentencing Guidelines represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses."). It is not surprising, therefore, that the courts have concluded that the Commission's determinations, as reflected in the Guidelines, of what sentences satisfy the sentencing purposes in Section 3553(a)(2) will usually fall within the range of sentences that are reasonable under Section 3553(a). See, e.g., *Terrell*, 445 F.3d at 1265 ("the Guidelines are generally an accurate application of the factors listed in § 3553(a)").

Third, Section 3553(a)(6) requires sentencing courts to strive to avoid unwarranted sentencing disparities, and "the guideline range . . . is the principal means of complying with" that goal. *United States v. Smith*, 445 F.3d 1, 6 (1st Cir. 2006); see *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n.1 (9th Cir. 2006) (Guidelines "help to maintain uniformity in sentencing throughout the country"); *United States v. Hunt*, 459 F.3d 1180, 1184 (11th Cir. 2006) ("The Guidelines . . . are an indispensable tool in helping courts achieve Congress's mandate to consider 'the need to avoid unwarranted sentence disparities' among similarly situated defendants.")

(quoting 18 U.S.C. § 3553(a)(6)). Because the remaining Section 3553(a) factors have no quantitative values and permit a court to consider a wide array of facts, the only practicable way for sentencing courts to achieve the uniformity goal expressed in Section 3553(a)(6) is to anchor their analysis to the Guidelines' sentencing ranges. See *Jiménez-Beltre*, 440 F.3d at 519 ("To construct a reasonable sentence starting from scratch in every case would defeat any chance at rough equality which remains a congressional objective."); *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005) (Section 3553(a) factors are "vague" and "hopelessly open-ended"). *Booker* itself stressed that the Commission's work product would "promote uniformity in the sentencing process," 543 U.S. at 263, and thus "continue to move sentencing in Congress's preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Id.* at 264-265.

Thus, district courts' "use of the guidelines remains central to the sentencing process." *United States v. Talley*, 431 F.3d 784, 787 (11th Cir. 2005). A properly calculated Guidelines range "remains the critical starting point for the imposition of a sentence under § 3553(a)." *United States v. Mashek*, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005). District courts may therefore properly give the Guidelines "substantial weight" when selecting the appropriate sentence. *Jiménez-Beltre*, 440 F.3d at 516; see *Id.* at 517-518; see also *Terrell*, 445 F.3d at 1265 (district court "did not err in giving 'heavy weight' to the Guidelines calculation").

Sentencing does not end with consideration of the Guidelines. After calculating and considering the advisory Guidelines range, the district court must also "consider[]

non-guideline sentencing factors under § 3553(a)." *Mix*, 457 F.3d at 913; see *United States v. Knows His Gun*, 438 F.3d 913, 918 (9th Cir. 2006) ("To comply with the requirements of Booker, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a)"). While the sentencing court always has the duty to consider all of the Section 3553(a) factors, see *Dean*, 414 F.3d at 729 ("Section 3553(a), unlike the guidelines themselves after Booker, is mandatory"), the parties bear primary responsibility for identifying any circumstance that supports a sentence outside the Guidelines. See, e.g., *Jiménez-Beltre*, 440 F.3d at 518-519 (approving district court's "sequential determination of the guideline range, . . . followed by the further determination whether other factors identified by either side warrant an ultimate sentence above or below the guideline range"). If no party establishes an "individualized, case-specific factor[] in § 3553(a)" that supports a sentence outside the Guidelines range, *United States v. Williams*, 456 F.3d 1353, 1369 (11th Cir. 2006), it is appropriate for the court to impose a Guidelines sentence in accordance with the Section 3553(a) factors.

An approach that begins with the Guidelines range and asks whether the other statutory factors warrant a different sentence does not mean that a district court may refuse to consider a non-Guidelines sentence absent "compelling" reasons. Reasonableness is a range, and a district court may find persuasive case-specific reasons grounded in the Section 3553(a) factors without calling them "compelling." But a principle of proportionality should govern the degree of variation from the range. As many courts have recognized, "the farther the district court varies from the . . . guidelines range, the more compelling the justification based on the § 3553(a) factors

must be." *United States v. McMannus*, 436 F.3d 871, 874 (8th Cir. 2006). That principle honors the pivotal role of the Guidelines in avoiding disparity and provides an objective framework for taking the measure of a sentence.

BirdinGround did not appeal his sentence. Therefore, the calculation of offense level and guideline range should remain undisturbed as correctly reflecting the level, history, and range attributable to BirdinGround in 2002. At that time, the Presentence Report established an offense level of 24, a CHC of I, and a range of 51 to 63 months. Although BirdinGround had done everything in his power to retract his guilty plea, and had consistently asserted his innocence and lack of any responsibility, the Court awarded him three points for acceptance of responsibility. That reduced the offense level from 24 to 21 and created a range of 37 to 46 months. The Court imposed a sentence of 37 months.

The Court reimposed that sentence in 2005.

The United States submits that no sentence of less than 37 months would be reasonable. Circumstances and events occuring since the date of the original sentence should not be considered, but if the Court entertains such new sentencing evidence, the United States would direct the Court to the Chairman's wide wake of corruption that has been revealed since the original sentence was imposed. Consider, *United States v. Passes and Passes, CR 04-47-BLG-RFC* (false contract to funnel money back to the Chairman for attorney's fees); *United States v. Gipson, CR 06-130-BLG-RFC* (false contract to funnel money back to the Chairman); *United States v. Passes and White, CR 04-49-BLG-RFC* (false contract to funnel money back to the Chairman for attorney's fees); *United States v. Passes and Findley, CR 04-48-BLG-RFC* (false contract to

funnel money back to the Chairman for attorney's fees); and, *United States v. Passes and Mountain Chief, CR 04-101-BLG-RFC* (false contract to funnel money back to the Chairman for attorney's fees). If anything, those cases emphasize that a more severe sentence should be imposed for the now well documented pervasiveness of the Chairman's corruption.

## RELEASE PENDING APPEAL

Assuming the Court reimposes a sentence within the guideline range, and assuming that another appeal is taken from that sentence, the United States would object to the defendant's continued release. The prosecution refers the Court to its January 30, 2006, order finding that there was no basis for continued release or stay of execution of the sentence of incarceration. The United States applauds that decision. It is time that he start serving a sentence.

The law governing bail pending appeal is set out in 18 U.S.C. § 3143(b). Section 3143(b)(1) provides, in part:

> **(b) Release or detention pending appeal by the defendant. –** (1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in –
> >
> > > (i) reversal,
> > > (ii) an order for a new trial,

          (iii) a sentence that does not include a term of imprisonment, or
          (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

The statute unequivocally establishes a presumption of detention. "Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained . . .."

Then the court needs to proceed to the exception, which requires the combination of three factors to overcome the presumption:

• **not likely to flee or pose a danger to the safety of any other person or the community** (Neither the United States nor the district court has ever asserted that BirdinGround is a flight risk or a danger. The first element is satisfied in favor of release.).

**and**

• **that the appeal is not for the purpose of delay** (Although not entirely convinced that another appeal would not be for the purpose of delay, the United States at this time would presumptively give BirdinGround the benefit of the doubt. For the purposes of this petition, this element would favor release.).

**and**

• **that the appeal raises a substantial question of law or fact likely to result in reversal** (The appeal will not result in reversal of the conviction as guilt or innocence, and the soundness of the conviction, have already been resolved and cannot be revisited in a subsequent appeal).

- **an order for a new trial** (For the reasons stated above, this appeal cannot result in a new trial)

- **a sentence that does not include a term of imprisonment** (The district court has now twice sentenced BirdinGround to the lowest possible term under a guideline range that is no longer subject to dispute as no objections were challenged in the first appeal and are therefore waived).

- **a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process**

The presumption that Congress wrote into Section 3143(b)(1) clearly establishes a public policy that brings closure to criminal proceedings by having the community witness a convicted defendant being held accountable for the crime. The Crow Tribe, betrayed by its Chairman, has waited over three years to see the sentence imposed be served; to know that their former disgraced leader has started paying on some of the debt owed to their society for his corruption; and to see justice done.

A defendant who wishes to be released on bail after the imposition of a sentence which includes a term of imprisonment must show that the question presented by the appeal is substantial in the sense that it is a close question or one that could go either way. It is BirdinGround's burden to carry in overcoming the presumption.

It is not sufficient to show simply that reasonable judges could differ (presumably every judge who writes a dissenting opinion is still "reasonable"), or that the issue is fairly debatable or not frivolous.

In *United States v. Handy*, 761 F.2d 1279, 1281-84 (9th Cir. 1985) the Circuit Court noted that several observations made in *United States v. Giancola*, 754 F.2d 898

(11th Cir. 1985), were accurate, i.e., that "a 'substantial question' is one of more substance than would be necessary to a finding that it was not frivolous," that "there are no blanket categories for what questions do or do not constitute 'substantial' ones," and that "[w]hether a question is 'substantial' must be determined on a case-by-case basis." *Giancola*, 754 F.2d at 901 (quoted in *Handy*, 761 F.2d at 1282 n. 2). The *Handy* court rejected, however, the "close question" analysis adopted in *Giancola*, emphasizing instead its support of the historically-based "fairly debatable" interpretation of the term "substantial." *Handy*, 761 F.2d at 1282-83.

Assuming that the third sentencing is as reasonable and well supported as the first two, BirdinGround has no basis for continued release under the statute. He cannot meet the third and final element that would justify continued release some three years after being sentenced.

## **CONCLUSION**

The defendant should be sentenced to a term of no less than 37 months incarceration and any request for release pending an appeal should be denied.

DATED this 3rd day of November, 2006.

                                                 WILLIAM W. MERCER
                                               United States Attorney

                                               /s/Carl E. Rostad
                                               CARL E. ROSTAD
                                               Assistant U.S. Attorney
                                               Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I certify that on November 3, 2006, the United States Attorney's Office served a copy of the attached Sentencing Memorandum and Opposition to Release Pending Appeal by fax and placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place(s) and address(es) stated below, which is/are the last known address(es), and by depositing said envelope and contents in the United States Mail at Missoula, Montana.

Addressee(s):

Penelope S. Strong
Attorney at Law
115 Clark Avenue
Billings, MT 59101
(Via Mail, Fax: 259-1609)

Paul G. Matt
Matt Law Office
P.O. Box 5
Billings, MT 59101
(Via Mail)

Clerk of District Court
(Via CM/ECF)

/s/Carl E. Rostad
CARL E. ROSTAD
Assistant U.S. Attorney
Attorney for Plaintiff