Penelope S. Strong
115 Clark Ave.
Billings, MT. 59101
Tel: (406) 259-3367
Fax: (406) 259-1609

Paul G. Matt
Matt Law Office
P.O. Box 5
Billings, MT. 59101
Tel: (406) 248-8844
Attorneys for Defendant

FILED
BILLINGS, MT

2003 NOV 20  PM 12 56

PATRICK E. DUFFY, CLERK

BY _____
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR 02-49-BLG-RFC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM OF** |
| ) | **AUTHORITIES REGARDING** |
| ) | **REMAND FOR REVIEW** |
| ) | **OF SENTENCE** |
| CLIFFORD BIRD IN GROUND, ) | |
| ) | |
| Defendant. ) | |

NOW COMES Clifford Bird In Ground, Defendant in the above-entitled case, and by his counsel Penelope S. Strong, and Paul G. Matt, and pursuant to the Court's Order of September 30, 2006, and hereby submits the above-entitled Memorandum of Law and Points and Authorities regarding the sentence previously imposed by the Court in this matter. Counsel also has filed in support of this Memorandum the Declaration of Attorney Penelope Strong, and various exhibits thereto. It is her intent that such serve as an offer of proof in this case and for the Court's consideration herein.

This memorandum also specifically reincorporates in this record the Pre-Sentence Investigation Report and the Addendum thereto.

## FACTUAL BACKGROUND[1]

Mr. Birdinground was formerly the chairman of the Crow Tribe, and took office on July 1, 2000. Homestead Hyundai, a Billings, Montana car dealership, solicited business from the Crow Tribe shortly after Mr. Birdinground took office. Contrary to the Government's factual assertion in its Memorandum, Mr. Birdinground himself did not personally arrange for the trade in of nine vehicles owned by the Crow Tribe and one vehicle owned by the Little Big Horn Casino. (Strong Declaration). Rather, according to the Defendant's debriefing, the tribe's buffalo manager, Ryan Bad Bear, made the arrangements after one Teri Braun, a

---

[1] The defense, in large part, disputes the factual version of the case circumstances presented by the government in their memorandum.

salesperson for Homestead Hyundai and a convicted felon, solicited the business from the tribe.

Over the next few months, Homestead-Hyundai misapplied funds from a trade-in account which it established in the name of the Crow Tribe for the vehicles it took into its physical custody. Homestead-Hyundai called this particular fund, the Crow Tribal Equity Account ( hereinafter " CTEA"). Terri Braun heavily solicited individual Crow Tribal members to make vehicle purchases for themselves. Braun, Richard Dean Benjamin or Wayne Kimmett prepared two typewritten documents in which they misapplied funds from the CTEA to pay individual down payments of varying amounts for some of those tribal members. They submitted one of these documents to Mr. Birdinground on July 20,200, and he signed it, believing it was only a verification of the individuals' employment with the Crow Tribe.

All of the individuals who made individual vehicle purchases were deposed by Mr. Birdinground's former legal counsel, Attorney Vern Woodward. None of them ever said that Mr. Birdinground in any manner, promised or directed the misapplication of the CTEA funds for their individual purchases for their individual benefit. ( Strong Declaration). The Crow Tribe and its casino operation purchased many vehicles from Homestead in 2000. Salesperson Teri Braun caused to be paid to Mr. Birdinground a " bird dog fee" of $100 per vehicle, paid by check

to Mr. Birdinground, which commission fee was standard in the motor vehicle industry for sales referrals. Also, those fees, which totaled \$2700.00, were actually taken from Ms. Braun's payroll checks as a deduction. The bird dog fees were paid for both the Crow Tribe purchases, and for the individual vehicle purchases.

Mr. Birdinground informed Attorneys Sam Painter and Majel Russell who were then working for the Crow Tribe that he had taken the "bird dog" fees. They advised him that a portion of those fees could be construed as a bribe if related to tribal governmental purchases. Mr. Birdinground repaid those fees long before he was indicted.

Mr. Birdinground had never held tribal office previously, and numerous witnesses and governmental officials acknowledged his political naiveté and the many problems that plagued the inception of his administration. They stated that he frequently trusted other individuals to interpret written documents and conversations on his behalf, as he could not understand them without assistance. He is not a native English speaker, and at least two experts, one a professor of education specializing in literacy and reading skills, and the other a licensed psychologist, documented through testing his learning disabilities and other psychological conditions that impacted his abilities to effectively serve as chairman. In fact, his previous legal counsel filed a Notice of Intent to Assert a

Defense of not guilty by reason of mental disease or defect, pursuant to the relevant Federal rule of criminal procedure.

Mr. Birdinground has no previous criminal history. He has served honorably in the United States military, and raised a large family on the Crow Reservation. He was employed long term by the federal government, working on road construction projects. He is now 70 years old.

## **RELEVANT PROCEDURAL HISTORY**

Mr. Birdinground was first indicted on five felony counts, including violations of 18 U.S.C. §661 – receiving a gratuity; 18 U.S.C. § 1163, theft from an Indian Tribe,18 U.S.C. § 371, conspiracy; 18 U.S.C. § 1168, theft from an Indian Gaming Establishment, etc.

Eventually, he entered into a plea agreement in which he pled guilty to the charge of illegally receiving a gratuity, contrary to 18 U.S.C. § 661 (a) (1) (B). As consideration for his guilty plea, the government agreed to dismiss the remaining counts in the indictment. Mr. Birdinground also agreed to resign his chairmanship on entering his guilty plea.

His legal counsel who counseled him during the guilty plea, discovered a conflict of interest, and Mr. Birdinground retained his present counsel of record. A timely motion to withdraw his guilty plea was filed, heard and adjudicated by this Court. Mr. Birdinground timely appealed the Court's decision, and that decision

was upheld by the Ninth Circuit Court of Appeals. However, after he filed a petition for rehearing en banc, the Ninth Circuit Court of Appeals found merit in his Petition and ordered the government to file a response in the fall of 2004.

Thereafter, Mr. Birdinground's case was swept into the tidal wave of post-**Blakely** and **Booker** litigation that occurred on a widespread basis throughout this country. Finally, the Ninth Circuit Court of Appeals remanded the matter, pursuant to the **Ameline** decision to the district court so it could determine if a new sentencing hearing was required. This Court determined a new hearing was not required, stating that it believed the United States Sentencing guidelines, while now no longer mandatory, promoted uniformity in sentencing, and that it continued to give great weight to the guidelines. Order of August 9, 2005.

Mr. Birdinground appealed this Court's decision not to grant him a resentencing hearing, and the Ninth Circuit Court of Appeals remanded his case so the Court could take the written views of both parties' counsel as to whether or not his case warranted a resentencing hearing. It is in this particular posture that this significant matter, which concerns the fated freedom of an elderly Crow Tribal member, comes again before this Court.

## ISSUE PRESENTED

**A.      Is a Sentence Materially Different from that Originally Imposed Justified in this Case, when this Honorable Court Considers that**

**the U.S. Sentencing Guidelines are No Longer Mandatory, but Rather Advisory and when it also Considers the Multiplicity of Sentencing Factors Embodied in 18 U.S.C. § 3553 (a), as Well as Previously Prohibited Factors?**

## ARGUMENT

**1.    The Applicable Legal Standard for an Ameline/Booker Remand Begins with an Accurate Sentencing Guidelines Computation.**

In United States v. Cantrell, 433 F. 3d 1269, 1279-81 (9th Cir. 2006), the Ninth Circuit Court of Appeals developed a two part test for reviewing sentences post- Booker. First, no longer **must** district courts sentence within an applicable guideline range. Id. This is because the guidelines are now simply advisory, and no longer have mandatory force of law. Obviously, this creates an opportunity for a district court to accord weight to factors that previously it was totally barred from considering in a federal sentencing proceeding.

However, the Ninth Circuit Court of Appeals has stated that lower courts should continue to consult the Guidelines. Id. When they do, it is imperative that any guidelines computation and applications of the same be accurate. United States v. Mix, 457 F. 3d 906, 911 (9th Cir. 2006). Any misinterpretation of the guidelines means a lower court has not properly consulted them, and if such is the case, then the matter will be remanded for sentencing. Id. Application of the

guidelines *to the facts of the case* is reviewed for abuse of discretion, and any factual findings, for clear error. United States v.Smith,424 F. 3d 992, 1015 (9th Cir. 2005 ).

The Government has asserted in its Memorandum that this Court can leave undisturbed its previous guidelines calculation and companion findings. Mr. Birdinground disputes this position and hereby reincorporates all his previous objections and the record relating thereto. Through counsel, he intends to set out the correct guidelines computation and errors of fact and law, as well as new grounds for a lesser sentence, which when they all are eventually combined, he advocates, require a new sentencing proceeding.

In addition, as the guidelines are advisory, the Ninth Circuit Court of Appeals, in United States v. Knows His Gun, 438 F. 3d 913, 918 (9th Cir. 2006) has stated that the primary guide for district courts in fashioning a criminal sentence , post- **Booker,** is 18 U.S.C. § 3553 (a). These statutory factors include a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the Defendant, and to provide the Defendant with needed training, medical care or other correctional treatment. While the sentencing court must not

specifically articulate each factor, there must be a showing the lower court considered these required factors in imposing sentence. Id.

In addition, after **Booker,** federal district courts are now free to fashion sentences lesser than the guideline range based on previously prohibited factors, such as evidence of good character, community service, family responsibilities, etc. United States v. Ameline, 409 F. 3d 1073,(9th Cir. 2005. Specifically, that court stated:

> " For instance, the Sentencing Guidelines' limitations on the factors a court may consider in sentencing- e.g., the impermissible grounds for departure set forth in §5K2.0 (d)- no longer constrain the court's discretion in fashioning a sentence within the statutory range."

Mr. Birdinground, as set out in the accompanying Declaration of Attorney Strong, will and is requesting this Court to reconsider its previous sentencing order and to use the new latitude available to all district courts judges after **Booker.** Specifically, Mr. Birdinground respectfully asks the Court to reconsider its factual findings supporting the denial of a downward departure for aberrant behavior and submits he can meet his burden of proof to sustain such a finding.

He most respectfully submits that while a sentencing proceeding was previously held, he was not accorded a full and complete sentencing hearing as will be argued later in this Memorandum. Specifically, the district court simply adopted numerous, unproven findings from the Pre-Sentence Investigation Report and Addendum, (herein after "PSR"), without hearing any testimony or without

adjudicating the various factual conflicts between the information contained in the PSR, and the facts presented by the Defendant's sentencing exhibits and other submissions at the time of sentencing.

The Defendant's counsel, Penelope Strong has submitted her Declaration in this matter to support these arguments and to specify the various proofs they would present at a sentencing hearing. See, Declaration of Attorney Penelope Strong.

## 2. The Higher Standard of Proof Beyond Reasonable Doubt Must Be Employed to Justly Sustain the Findings of Fact and Conclusions of Law Which Support the 14 point Enhancements that result in a Sentence Greater than that allowed by the Base Level offense.

Due Process can only be fulfilled at a sentencing hearing if the parties have an opportunity to develop evidence, submit memoranda, and as well to present witnesses and argue their positions. United States v. Johansson, 249 F. 3d 848, 857 (9th Cir. 2001). Moreover, Mr. Birdinground contends that any factual findings supporting any sentencing enhancements must now be found to the greater standard of proof beyond a reasonable doubt, which falls under the constitutional rubric of the Fifth Amendment Due Process Clause to the United States Constitution. In Re Winship, 397 U.S. 358 (1970). Further authority for this position is found in Apprendi v. New Jersey, 530 U.S. 466 (2000), in which the United States Supreme Court held that any fact which increased the maximum

sentence had to be proved to a jury beyond a reasonable doubt. In fact, the Court noted that the Due Process protections of <u>In Re Winship</u>, supra at 363-64, namely proof beyond a reasonable doubt, do extend to decisions that go only to the length of the sentence in a criminal case. <u>Apprendi</u>, supra at 484.

Thus, even if this standard is employed by a judge and not a jury, a proper evidentiary hearing must be held for full and fair adjudication of this heightened evidentiary standard. See also, <u>Ring v. Arizona,</u> 536 U.S. 584 (2002), in which the United States Supreme Court held that increase in a defendant's authorized punishment must be found by a jury beyond a reasonable doubt. As the United States Supreme Court stated in <u>In Re Winship,</u> supra, 363 "the reasonable doubt standard is the prime instrument for reducing the risk of convictions resting on <u>factual error."</u>

Mr. Birdinground' s base level offense was ten points - the court made findings totaling another 14 points based primarily on the PSR, not on any fact found by a jury or admitted by the Defendant at his sentencing, except for accepting the gratuities while he was chairman of the Crow Tribe.

At a level ten, this individual would fall into zone B and thus would be eligible pursuant to U.S.S.G. §5B1.1 (a)(2) for a probationary sentence, combined with a sentence of home detention, community confinement, etc. Mr.

Birdinground's attorneys submit this is the most fitting and just sentence for him, and is one which synthesizes all the relevant factors of 18 U.S.C. §3553.

Certainly, a criminal defendant in our federal system facing sentencing enhancements that drive his or her sentence above and beyond the standard guideline range are likewise entitled to the full, just and comprehensive application of proof beyond a reasonable doubt. In this situation, only the reconvening of an evidentiary hearing for sentencing purposes can fulfill that right.

In the alternative, it is argued that the current standard of clear and convincing evidence; See, United States v. Jordan, 256 F. 3d 922, 927-8 (9th Cir. 2001); cannot be met on the current record of the sentencing hearing. Moreover, the PSR, and the Court relied on evidence that the defense submits is not reliable. Even if the Court does not adopt the standard of proof beyond a reasonable doubt, it must reconvene a new sentencing hearing in this matter. Pursuant to the binding precedent of Jordan, supra, any sentencing enhancement that has a disproportionate impact on the length of a sentence must be proven by clear and convincing evidence.

**3.    Mr. Birdinground's Sentence Must be Recomputed, to Avoid Error and a Miscarriage of Justice, and a New Sentencing Hearing Must be Held.**

Without obtaining the views of counsel, at least in writing, this Court on August 9, 2005, determined that resentencing Birdinground was unwarranted as the sentence would not materially differ under the current advisory guideline regime. (Order, August 9, 2005, p. 2). The Court based its decision on its continued position to give great weight to the Sentencing Guidelines. Id. The Ninth Circuit has stated the Sentencing Guidelines are now only advisory and one factor to be considered under Section 3553(a). See, Cantrell, supra at 1278.

At Birdinground's sentencing on September 11, 2003, the Court viewed the Sentencing Guidelines as mandatory. The Court summarily denied Birdinground's counsel an opportunity to argue its objections to the pre-sentence investigation report and have the Court receive a response of the Government. Instead, the Court adopted the pre-sentence investigation report's findings of facts and adopted verbatim the addendum to the pre-sentence report responding to Birdinground's objections. (Sentencing Hearing, September 11, 2003, pp. 5-11). Using the findings of the addendum to the pre-sentence investigation report, the Court increased Birdinground's base offense level 14 points. The Court, by adopting the Addendum found it was "reasonably foreseeable" Birdinground knew or understood his actions meriting upward departures were criminal. Mr.

Birdinground disputes this particular finding, and contends it has no factual or legal basis in this case.[2]

The legislatively established process for sentencing pursuant to Fed. Rule of Crim. Pro. 32 is:

1.   the probation officer's recommendation contained in the PSR;

2.   the defendant's opportunity to submit objections thereto;

3.   the satisfactory resolution by the Court of any facts adduced to support the various criminal acts that would lead to particular findings under the U. S. Sentencing Guidelines to allow the judge to impose a harsher sentence.

The opportunity to object is hollow if the Court denies the defendant the opportunity to argue against the pre-sentence investigation allegations and present evidence.   At Birdinground's September 11, 2003, sentencing he presented the Court with 17 exhibits demonstrating the faulty conclusions of facts found in the PSR and Addendum.   The Court admitted the exhibits but denied the Defendant a hearing because it believed that much of the Defendant's objections were directed to a defense of the case.

> "THE COURT:  And I'm going to admit the defendant's exhibits 1 through 17 for the purpose of this record for appeal and would note that at least one of the reasons that I don't need a hearing, I think

---

[2] A standard of reasonable forseeability is more akin to a tort standard of liability, i.e. that of negligence, as opposed to the specific mens rea required for most criminal offenses.

much of this is directed to a defense of the case, and I've already accepted Mr. Birdinground's plea of guilty, and in my mind at this time it's irrelevant." (at p. 6, lines 12-18).

Respectfully, the court erred in making this assessment of the relevance of this evidence. Many upward guideline adjustments are typically based on the criminal conduct at issue and on relevant conduct. Defense counsel are duty bound then, to defend the case, and those particular findings, to avoid a harsher sentence for their clients.

Defendant's exhibits and arguments were submitted to inform the Court of the exact nature and circumstances of the offense Birdinground pled guilty to and to the substantial allegations of relevant conduct alleged in the PSR. District courts are obligated to consider, in addition to the sentencing guidelines, all factors enumerated in 18 U.S.C.§ 3553(a), including: (1) the nature and circumstances of the offense and a history of the defendant. The nature of Birdinground's offense is that he pled guilty to a charge of receiving a gratuity in violation of 18 U.S.C., § 666. The circumstances of the offense are that salesperson Terry Braun gave Birdinground the bird dog fees so that she could claim the commission from the sale of vehicles to the Crow Tribe or individuals. Mr. Birdinground disputes that she paid the bird dog fees for the purpose of influencing him as Tribal Chairman. Consequently, another sentencing hearing is necessary for this Court to reconsider its factual findings, adopted from the PSR and the Addendum.

This Court enhanced Birdinground's sentence by 14 points based on the information and recommendations of the pre-sentence investigation report and addendum. (September 11, 2003, Transcript, pp. 15-17). Those enhancements were based on the following findings:

1.  2-Level increase because the offense involved more than one bribe. (2 C1.1(b)(1).

2.  8-Level increase pursuant to U.S.S.G.§ 2C1.1 (b ) ( 2) ( B ) because he was elected Crow Tribal Chairman and the offense involved the payment for the purpose of influencing an elected official or any official holding a high-level, decision-making or sensitive position.

3.  2-Level increase because he was an organizer, leader, manager, or supervisor in the criminal activity. (2B1.1(c)).

4.  2-Level increase because he willfully obstructed or impeded or attempted to obstruct or impede the administration of justice during the course of the investigation.

Each of these upward adjustments involves separate criminal conduct or Birdinground's position with respect to criminal conduct that he did not admit to. For each of these allegations, Birdinground is both presumptively innocent and has a right against self-incrimination. Mitchell v. United States, 525 U.S. 314 (1999); United States v. Antelope, No. 03-30334 (9th Cir. June 27, 2005). Birdinground

has not admitted to the criminal conduct of being influenced in his position as Chairman of Crow Tribe or criminal conduct of being the leader of a criminal investigation or obstruction of justice. Furthermore, the Court convicting Birdinground of criminal conduct meriting an upward adjustment based on a "reasonably foreseeable" standard is contrary to established law.

The Court concluded Birdinground should receive a two level increase as an organizer in a criminal activity because he signed the allocation of CTEA funds for tribal individuals who purchased personal vehicles. (September 11, 2003, hearing, p. 16, lines 10-15). The Court's factual findings supporting that adjustment for Birdinground signing the CTEA allocation is found in the probation officer's response to objection No. 1;

> "It is reasonably foreseeable that the defendant, who was assisted by Mr. Benjamin, understood the agreements of which he was signing in the letters described in paragraph 16 through 18."

This is disputed by the defense and is contrary to the factual contentions and proffers of the Defense. See Declaration of Attorney Strong.

In addition, the Court concluded Birdinground should receive an 8-Level increase because he was the elected Tribal Chairman and the offense involved payments for the purpose of influencing an elected official. (September 11, 2003, hearing, p. 16, lines 1-9). This demonstrates the Court's need to consider the circumstances of the offense to which Birdinground had pled.

The bird dog fees were paid to Birdinground by Homestead Hyundai salesperson Terry Braun so that she would be listed as the commission salesperson for each vehicle sold to the Crow Tribe or individual. Birdinground will present at a sentencing hearing evidence and possibly the testimony of former salesperson Terry Braun to inform the Court of these circumstances. There was no influence exerted by the payment of those fees; they were solely for the purpose of Terry Braun claiming the commissions of all the vehicles sold to the Crow Tribe or Crow individuals.

The Court further found Birdinground received a two level increase because he willfully obstructed or attempted to obstruct justice during the course of the investigation regarding tribal contracts by falsifying documentation to make tribal contracts appear legitimate. (September 11, 2003, hearing, p. 16, lines 17-25). The Court's support of this enhancement is found in the probation officer's response to objection No. 8:

> "It is reasonably foreseeable that the Defendant knew the contracts were falsified because he suggested the inflation of the contract to Passes."

Again the defense objects to this erroneous standard of proof and this finding, for the reasons previously noted.

The Ninth Circuit Court of Appeals has stated that when a district court reviews a past sentencing decision pursuant to a remand under Ameline, that the

respective arguments of counsel may assist to train the court's analysis on overlooked facts that may be relevant under 18 U.S.C. § 3553 ( a). <u>United States v. Montgomery,</u> No. 05-10587, page 10437).

**5.    A New Sentencing Hearing Will Serve Justice in This Case and Accord the Court an Opportunity to apply the New Standards of Law.**

The Ninth Circuit Court of Appeals has continued to emphasize the sea change wrought in federal sentencing law and practices since the decision in <u>Booker.</u> It has stated that under the now advisory guidelines, the district court can in every case consider factors that were either discouraged or outright prohibited before the <u>Booker</u> decision. <u>Montgomery,</u> supra at 10437. As noted in Attorney Strong's Declaration, this is the request of Mr. Birdinground in his case.

First he would point out that the victim in this case, the people of the Crow Tribe, have not advocated for the prison term continually advanced by the United States government. While the government paints a very dark and even sinister picture of the former Birdinground administration as corrupt[3], interestingly no members of the Crow Nation or its government have submitted victim impact statements or stepped forward to demand a prison term for this elderly defendant. Certainly, it is universally understood in our criminal justice system that the

---

[3] Counsel disputes this conclusory view of the former Birdinground administration.

victims of any criminal offense are entitled to have their views credited, and taken into account in sentencing a defendant, especially any need in their opinions for incarceration.

To the contrary, many tribal members submitted letters on Mr. Birdinground's behalf and one tribal elder testified in his support at his sentencing hearing, emphasizing changes he made during his administration that benefited Crow Elders, as well as the massive change in Crow tribal government, including enacting a new constitution and a legislative system. The government has complained mightily in the past about the institutional deficits in the Crow Tribal governmental system of "town hall democracy", so it is unfair to fail to credit Mr. Birdinground with this substantial change that probably will provide a more just and open system of government for the Crow Tribe.

Both the Court and the government state the federal sentencing guideline system brings uniformity to federal cases. However, counsel would note that in another recent case, involving a former top- ranking Enron executive, one Richard Causey, a prison sentence of five and a half years was imposed in federal court in Houston, Texas for a national scandal that involved millions of dollars. (See article from the *Billings Gazette,* 11/16/06, attached as Exhibit A hereto). Mr. Birdinground has been sentenced to over three years for accepting and then returning $28 hundred in bird dog fees.

Finally, counsel would point out the comments of United States Supreme Court Justice Anthony Kennedy, on August 9, 2003, in which he took our federal criminal justice system to task for our extremely high level of incarceration. He also stated pointedly that the legislative compromise that led to the enactment of the federal sentencing guidelines has led to an increase overall in the length of prison terms issued pursuant to those guidelines. As stated in his pivotal address to the American Bar Association in San Francisco on August 9, 2003:

**"...our punishments are too severe, our sentences too long.....We should revisit this compromise. The Federal Sentencing guidelines should be revised downward."**

Once again then, the halcyon principles of 18 U.S. C. § 3553 ( a ), that now are the primary guide for a federal sentence must be reviewed, and wisely applied to the particular circumstances of this case. As for the characteristics of this man, the defense submits that this defendant will never again reoffend, thus the need for specific deterrence is negligible in this case. As for general deterrence, the Crow Tribe is heavily investigated and scrutinized by ever vigilant federal investigators, and while deterrence is important, counsel submits that a prison term for Mr. Birdinground is unnecessary to fulfill that important purpose, or likewise, to promote respect for the law. This defendant timely pled guilty, attempted to cooperate with the government, and has never stated he did not respect the law.

Further, as to the nature and circumstances of the offense, the Court should remember this is not a crime of violence, where incapacitation is essential to protect the public and the victim from future harm. Neither is it the handiwork of a sophisticated and corrupt politician, who has considerable experience in political life and in skirting the limits of the law. Rather, a fair and just analysis of this offense reveals it was not initiated by Mr. Birdinground, the payments were open and above board, and not "under the table " cash. (Mr. Birdinground was paid by check for the bird dog fees). The fees were paid so Terry Braun would receive 28 commission checks. The gratuities was repaid promptly by this Defendant when his legal counsel advised him of the potential illegality of those payments, a substantial fact which proves not only his good faith, but as well his ability to receive competent legal advice and act on it. Finally the entire tragic scenario in this case, when put in proper perspective, reveals a situation in which a markedly naïve and unsophisticated individual attained the highest office possible in his tribe, and simply could not function at the demanding level necessary to effectively function in that office, and control the behavior of others employed by him, and those outsiders who aggressively solicited the business of the Crow Tribe.

As a final note, and plea for justice, counsel again refer back to the words of Justice Kennedy, who noted in that same keynote speech this wise observation:

**"A people confident in its laws and instructions should not be ashamed of mercy. The greatest of poets reminds us that mercy " is mightiest in the mightiest".**

Counsel for Mr. Birdinground have absolutely no compunction in advocating for another sentencing hearing in this case, and will, at that time, argue for a sentence at a level ten under the guidelines. No more punishment is required to serve the interests of the victim, the defendant, and our government, in this case. Home confinement or community confinement and a probationary sentence will adequately serve the goals to be achieved in this case.

Dated this *18th* day of November, 2006.

RESPECTFULLY SUBMITTED:

Penelope S. Strong

# CERTIFICATE OF SERVICE

On November 20th, 2006, I mailed via first class mail the above-entitled

document to :

Carl Rostad
Assistant U. S. Attorney
PO Box 1478
Billings, MT 59103

_____
Paul G. Matt

EXHIBIT

tabbies

_A_____

MEMORANDUM

# Ex-Enron exec gets 5 1/2-year sentence

HOUSTON (AP) — Richard Causey, the last of the top Enron Corp. executives to learn his punishment, was sentenced Wednesday to 5 1/2 years in prison for his role in one of the biggest corporate scandals in U.S. history.

Causey, the energy trading company's former chief accounting officer, pleaded guilty in December to securities fraud two weeks before he was to



**CAUSEY**

be tried along with Enron founder Kenneth Lay and former chief executive Jeffrey Skilling on conspiracy, fraud and other charges.

"There were improper things done at Enron. Some of those things were done by me. For that, I'm sorry," Causey said before U.S. District Judge Sim Lake sentenced him. "As God is my wit-

ness, I never did anything intentionally to enrich myself or hurt the company or its employees."

After Causey, 46, serves his five years, six months in prison, he will have to serve two years' probation and pay a $25,000 fine that will be distributed to Enron's victims. Causey had already agreed to pay $1.25 million to the victims' funds and forfeited a claim to about $250,000 in deferred compensation

The maximum penalty for securities fraud is 10 years in prison and a fine of $1 million or twice the amount illegally gained.

Causey's sentencing came less than a month after ex-CEO Skilling was sentenced to more than 24 years in prison. It also came a week after Andrew Fastow, Enron's former chief financial officer, was sentenced to six years. Fastow had testified against Skilling and Lay, who were convicted in May of conspiracy and fraud. Lay's convictions were wiped out with his July death from heart disease.